UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**GLOBAL ENERGY AND MANAGEMENT,** :
**LLC**, a limited liability company of Connecticut,

        Plaintiff,   :     07 Civ. 11049 NRB

   -vs-

**XETHANOL CORPORATION, CHRISTO-**:   SECOND AMENDED COMPLAINT and
**PHER D'ARNAUD-TAYLOR, JEFFERY**    DEMAND FOR JURY TRIAL
**LANGBERG, LAWRENCE S. BELLONE,**:
**LOUIS B. BERNSTEIN, DAVID AMES,**
**THOMAS J. ENDRES, ROBIN BUL-**  :
**LER, DAVID KREITZER** and **JOHN**
**MURPHY,**

        Defendants. :
_____x

    Global Energy and Management, LLC, a limited liability company of Connecticut ("plaintiff" or "Global Energy"), with its principal place of business at 130 Captains Drive, Westbrook, Connecticut, complains as follows:

### JURISDICTIONAL STATEMENT

    1.   Global Energy is a limited liability company of Connecticut whose principal place of business is located in Connecticut.

    2.   All members of Global Energy are citizens of Connecticut.

    3.   Xethanol Corporation is a Delaware corporation whose principal place of business is in New York.

    4.   Upon information and belief, none of the individual de-

fendants is a Connecticut citizen.

5. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Upon information and belief, defendant Christopher D'Arnaud-Taylor was an officer of Xethanol at all times relevant to this action.

7. Upon information and belief, defendant Jeffery Langberg was a director of Xethanol at certain times relevant to this action and an advisor to the board of directors at other times relevant to this action.

8. Upon information and belief, defendant Lawrence S. Bellone was a director and the chief financial officer of Xethanol at all times relevant to this action.

9. Upon information and belief, defendants Louis Bernstein, David Ames, Thomas J. Endres, Robert Buller, David Kreitzer and John Murphy were either directors, officers or employees of Xethanol at all times relevant to this action.

10. Defendants represented to Lee Tyrol, the manager of Global Energy, and other representatives of Global Energy that Xethanol could manufacture cellulosic ethanol (ethanol made from garbage and wood as opposed to ethanol made from corn or sugar) in a commercially profitable manner.  Defendants misrepresented the state of Xenathol's business operations and the state of the technology it possessed.  They stated that Xethanol owned patents

and other technology from which it could manufacture ethanol from bio-mass in a profitable manner.  They also stated that they were currently producing 6,000,000 gallons of ethanol a year which was not true.

   11.   The individual defendants made these representations to Lee Tyrol and other representatives of Global orally on many telephone calls and in innumerable meetings.  Defendants also made the following representations in written documents including, but not limited to, the following:

   a.   In a brochure published in January 2005 entitled "Xethanol: Biomass to Biofuels" that Xethanol was producing 6,000,000 gallons of ethanol a year.

   b.   In a press release dated August 26, 2005, Xethanol reported that it had acquired the stock of Xylose Technologies, Inc..  The release quoted Christopher d'Arnaud Taylor as saying: "This is far more than a purchase of a milestone technology for lowering the cost of making ethanol from biomass.  Rather, it is the pooling of Xethanol management with a world class scientific team headed by Dr. Jeffries that will continue to develop ways to make xylitol and ethanol more efficiently from biomass.  This alliance with Dr. Jeffries and his team at the USDA Forest Products Lab will enable Xethanol to accelerate development and deployment of its biomass technologies."

   c.   In a press release dated September 16, 2005, Xethanol

stated: "Xethanol Corporation seeks to become a leader in the emerging biomass-to-ethanol industry.  Its mission is to convert biomass that is currently being abandoned or land filled into ethanol and other valuable co-products, such as xylitol.  Xethanol's strategy is to deploy proprietary bio-technologies that will extract and ferment the sugars trapped in these biomass waste concentrations.  Xethanol's goal is to produce ethanol and valuable co-products more cost effectively than corn-based processors with Xethanol plants located closer to biomass sources.  In Iowa, Xethanol owns and operates two ethanol production facilities, where it is deploying these technologies."

  d. On or about February 21, 2006 at the Xethanol office in New York, Christopher D'Arnaud Taylor and Jeffrey Langberg stated that Xethanol possessed the technology for the cellulosic production of ethanol on a commercially profitable basis.

  e. In a Form 10KSB filed with the Securities and Exchange Commission on or about March 31, 2006, Xenathol described its plan of operation as follows: "Our expected revenue model is based on the sale of ethanol and a related co-product called xylitol.  Xylitol is a natural sweetener that was approved by the FDA in the 1980's for use in foods and beverages, including chewing gums, candles, toothpastes and diabetic regimens.  Xylitol is a co-product derived from biomass-to-ethanol production.  At the present time, we own two ethanol plants in Iowa - Xethanol Bio-

Fuels in Blairstwon and Permeate Refining in Hopkinton.  We also own several proprietary bio-extraction, bio-separation and bio-fermentation technologies that are targeted at reducing costs throughout the entire ethanol production process as well as enabling the conversion of biomass to ethanol and xylitol."

 f. Defendants allowed Xethanol to be featured in the February 2006 issue of Fortune Small Business.  D'Arnaud-Taylor represented that Xethanol had the technology to convert garbage into ethanol, stating "Xethanol isn't just relying on candy for its fuel supply.  This year it plans to introduce a process that will make it possible to turn all kinds of things - including cornstalks, grass clippings, and old newspapers - into ethanol. . . Xethanol will use a recently discovered form of yeast to ferment various types of garbage into ethanol.  It has obtained rights to the process from the U. S. Department of Agriculture, where a scientist discovered that yeast in the intestines of a type of beetle can convert plant-based waste product into ethanol.  This year d'Arnaud-Taylor intends to begin opening plants on the East Coast that will use yeast from the beetles to brew ethanol from sludge left over from paper milling.  The plants will be able to make in total more than 100 million gallons a year."

 g. On or about May 18, 2006 at the Xethanol office in New York, Christopher D'Arnaud Taylor, Jeffrey Langberg, Lawrence Bellone and Robin Bullers again stated that Xethanol had the

technology with which to engage in the cellulosic production of ethanol on a commercially profitable basis.

    h.   On or about June 8, 2006 at the Xethanol office in New York, in the presence of Lee Tyrol, Erik Bartone and Mark DiBella, D'Arnaud Taylor, Langberg, Bellone and Bullers again stated that Xethanol had the technology with which to engage in the cellulosic production of ethanol on a commercially profitable basis.

    i.   On or about August 11, 2006 at the Xethanol office in New York, in the presence of Tyrol and Bartone, D'Arnaud Taylor, Langberg, Bellone and Bullers represented again that Xethanol had the technology with which to engage in the cellulosic production of ethanol on a commercially profitable basis.

    j.   On or about September 13, 2006 in a telephone conference among DiBella, Tyrol, Bartone, DiBella, Langberg, Robert Bernstein, Bellone and Buller, Langberg, Bernstein, Bellone and Butler represented that Xethanol had the technology with which to engage in the cellulosic production of ethanol on a commercially profitable basis.

    k.   On or about October 12, 2006 at New England Xethanol's office in Hartford attended by DiBella, Tyro, Bartone, DiBella, Bellone and Buller, Bellone and Buller represented that Xethanol had the technology with which to engage in the cellulosic production of ethanol on a commercially profitable basis.

    l.   On or about November 14, 2006 at the Xethanol office in New York, in the presence of Tyrol and Daniel Millstein, David

Amees, Langberg, Bellone and Buller represented that Xethanol had the technology with which to engage in the cellulosic production of ethanol on a commercially profitable basis.

12.  The representations made by defendants to Tyrol and the other Global representatives were false and known by defendants to be false when they were made.

13.  Defendants made their representations in order to induce plaintiff to rely on them.

14.  Global relied on the representations of defendants to its detriment and, in reliance on their representations, invested $250,000 into New England Xethanol, a limited liability company formed by Global and by Xethanol to engage in the biomass to biofuels business.

15.  As a result of the foregoing, plaintiffs were damaged in an amount exceeding $10,000,000.

Wherefore, Global demands judgment a) compelling defendants to pay $10,000,000 to Global, b) consequential damages, c) pre-

judgment interest, d) costs of suit and e) such other relief as the Court may hold just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues triable by jury.

ROBERT A. VORT, LLC

Dated: March   , 2008

_____
Robert A. Vort
Attorney for Plaintiff
2 University Plaza
Hackensack, New Jersey 07601
201-342-9501
201-342-9504 fax
rvort@vortlaw.com