UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**GLOBAL ENERGY AND MANAGEMENT,** :
**LLC,** a limited liability com-
pany of Connecticut, :

        Plaintiff, :   07 Civ. 11049 NRB

   -vs-

**XETHANOL CORPORATION, CHRISTO-**:  **THIRD AMENDED COMPLAINT** and
**PHER D'ARNAUD-TAYLOR, JEFFERY**    **DEMAND FOR JURY TRIAL**
**LANGBERG, LAWRENCE S. BELLONE,**:
**LOUIS B. BERNSTEIN, DAVID AMES,**
and **ROBIN BULLER,** :

        Defendants. :
_____x

    Global Energy and Management, LLC, a limited liability company of Connecticut ("plaintiff" or "Global Energy"), with its principal place of business at 130 Captains Drive, Westbrook, Connecticut, complains as follows:

### JURISDICTIONAL STATEMENT

    1.   Global Energy is a limited liability company of Connecticut whose principal place of business is located in Connecticut.

    2.   All members of Global Energy are citizens of Connecticut.

    3.   Xethanol Corporation is a Delaware corporation whose principal place of business is in New York.

    4.   Upon information and belief, none of the individual defendants is a Connecticut citizen.

5.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

6.  Upon information and belief, defendant Christopher D'Arnaud-Taylor was an officer of Xethanol at all times relevant to this action.

7.  Upon information and belief, defendant Jeffery Langberg was a director of Xethanol at certain times relevant to this action and an advisor to the board of directors at other times relevant to this action.

8.  Upon information and belief, defendant Lawrence S. Bellone was a director and the chief financial officer of Xethanol at all times relevant to this action.

9.  Upon information and belief, defendants Louis Bernstein, David Ames, Thomas J. Endres, Robert Buller, David Kreitzer and John Murphy were either directors, officers or employees of Xethanol at all times relevant to this action.

10. As set forth in this paragraph, the individual defendants represented to Lee Tyrol and other representatives of Global orally on many telephone calls and in innumerable meetings that Xethanol could manufacture cellulosic ethanol (ethanol made from garbage and wood as opposed to ethanol made from corn or sugar) in a commercially profitable manner. Defendants misrepresented the state of Xethanol's business operations and the state of the technology it possessed. They stated that Xethanol owned

patents and other technology from which it could manufacture ethanol from bio-mass in a profitable manner. They also stated that they were currently producing 6,000,000 gallons of ethanol a year. More particularly:

    a.   In a brochure published in January 2005 entitled "Xethanol: Biomass to Biofuels" that Xethanol was producing 6,000,000 gallons of ethanol a year.

    b.   In a press release dated August 26, 2005, Xethanol reported that it had acquired the stock of Xylose Technologies, Inc.. The release quoted Christopher d'Arnaud Taylor as saying: "This is far more than a purchase of a milestone technology for lowering the cost of making ethanol from biomass. Rather, it is the pooling of Xethanol management with a world class scientific team headed by Dr. Jeffries that will continue to develop ways to make xylitol and ethanol more efficiently from biomass. This alliance with Dr. Jeffries and his team at the USDA Forest Products Lab will enable Xethanol to accelerate development and deployment of its biomass technologies."

    c.   In a press release dated September 16, 2005, Xethanol stated: "Xethanol Corporation seeks to become a leader in the emerging biomass-to-ethanol industry. Its mission is to convert biomass that is currently being abandoned or land filled into ethanol and other valuable co-products, such as xylitol. Xethanol's strategy is to deploy proprietary bio-technologies that

will extract and ferment the sugars trapped in these biomass waste concentrations.  Xethanol's goal is to produce ethanol and valuable co-products more cost effectively than corn-based processors with Xethanol plants located closer to biomass sources.  In Iowa, Xethanol owns and operates two ethanol production facilities, where it is deploying these technologies."

    d. On or about February 21, 2006 at the Xethanol office in New York, Christopher D'Arnaud Taylor and Jeffrey Langberg told Lee Tyrol, William DiBella and Eric Bartone that Xethanol possessed the technology for the cellulosic production of ethanol on a commercially profitable basis.  Taylor said that he could "make a plant" producing cellulosic ethanol that would make money and be profitable in Tyrol's front yard.  Langberg produced a Tupperware container about two feet long, one foot wide and two feet deep which supposedly contained a sugar which was the byproduct of the cellulosic production of ethanol.  Taylor demonstrated with markers on a whiteboard how one could put garbage into a plant and produce ethanol.  Over the hand-drawn flow chart, Taylor wrote "Garbage In, Ethanol Out."  Taylor and Langberg told the Global representatives that Xethanol was already converting garbage into ethanol at its Iowa plant and selling the product.  After this meeting, Tyrol and William DiBella met with Joseph J. Grano, Jr., chairman and chief executive officer of Centurion Holdings, LLC, an advisor to the board of directors of Xethanol.

Grano stated that "these boys seem to have finally got it right," and he confirmed that Xethanol had the technology to convert garbage into ethanol in a commercially profitable manner.

  e. In a Form 10KSB filed with the Securities and Exchange Commission on or about March 31, 2006, Xenathol described its plan of operation as follows: "Our expected revenue model is based on the sale of ethanol and a related co-product called xylitol.  Xylitol is a natural sweetener that was approved by the FDA in the 1980's for use in foods and beverages, including chewing gums, candles, toothpastes and diabetic regimens.  Xylitol is a co-product derived from biomass-to-ethanol production.  At the present time, we own two ethanol plants in Iowa - Xethanol Bio-Fuels in Blairstwon and Permeate Refining in Hopkinton.  We also own several proprietary bio-extraction, bio-separation and bio-fermentation technologies that are targeted at reducing costs throughout the entire ethanol production process as well as enabling the conversion of biomass to ethanol and xylitol."

  f. Defendants allowed Xethanol to be featured in the February 2006 issue of Fortune Small Business.  D'Arnaud-Taylor represented that Xethanol had the technology to convert garbage into ethanol, stating "Xethanol isn't just relying on candy for its fuel supply.  This year it plans to introduce a process that will make it possible to turn all kinds of things - including cornstalks, grass clippings, and old newspapers - into ethanol. . .

Xethanol will use a recently discovered form of yeast to ferment various types of garbage into ethanol.  It has obtained rights to the process from the U. S. Department of Agriculture, where a scientist discovered that yeast in the intestines of a type of beetle can convert plant-based waste product into ethanol.  This year d'Arnaud-Taylor intends to begin opening plants on the East Coast that will use yeast from the beetles to brew ethanol from sludge left over from paper milling.  The plants will be able to make in total more than 100 million gallons a year."

  g. On or about May 18, 2006 at a meeting at the Xethanol office in New York attended by Christopher D'Arnaud Taylor, Jeffrey Langberg, Lawrence Bellone and Robin Bullers on behalf of Xethanol and by Lee Tyrol, Mark DiBella and Eric Bartone on behalf of plaintiff, Taylor drew another flow chart on a white board demonstrating that garbage could be placed within machinery which would ethanol.  Langberg stated to Tyrol, DiBella and Bartone that this technology would "make a fortune" for Global and for Xethanol.  Bellone and Bullers participated in the conversations, contradicted nothing said by Taylor and by Langberg and independently confirmed their beliefs that this process of converting garbage to ethanol was feasible and would be very profitable.

  h. On or about June 8, 2006 at the Xethanol office in New York, in the presence of Lee Tyrol, Erik Bartone and Mark DiBella, D'Arnaud Taylor, Langberg, Bellone and Bullers again stated that Xethanol had the technology with which to engage in the cel-

lulosic production of ethanol on a commercially profitable basis.

11.  The representations made by defendants to Tyrol and the other Global representatives were false and known by defendants to be false when they were made.

12.  Defendants made their representations in order to induce plaintiff to rely on them.

13.  Global relied on the representations of defendants to its detriment and, in reliance on their representations, invested $250,000 into New England Xethanol, a limited liability company formed by Global and by Xethanol to engage in the biomass to biofuels business.

Wherefore, Global demands judgment a) compelling defendants to repay Global's $250,000 investment, b) Global's lost profits from New England Xethanol in such amount as the evidence shall prove, b) consequential damages, c) pre-judgment interest, d) costs of suit and e) such other relief as the Court may hold just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues triable by jury.

                                                ROBERT A. VORT, LLC

Dated: May 15, 2008                       _____
                                                Robert A. Vort
                                           Attorney for Plaintiff
                                            2 University Plaza
                                 Hackensack, New Jersey 07601
                                              201-342-9501
                                          201-342-9504 fax
                                        rvort@vortlaw.com