Anthony Paduano (AP 8400)
Katherine B. Harrison (KH 9745)
Kathryn L. Bedke (KB 7855)
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
(212) 785-9100
Attorneys for Defendant
Xethanol Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GLOBAL ENERGY AND MANAGEMENT, LLC,      :

                           Plaintiff,      :

        -against-      :      No. 07-CV-11049 (NRB)

        :

XETHANOL CORPORATION,  CHRISTOPHER
D'ARNAUD-TAYLOR, JEFFERY LANGBERG,      :
LAWRENCE S. BELLONE, LOUIS B. BERNSTEIN,
DAVID AMES, and ROBIN BULLER,      :

                    Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
XETHANOL CORPORATION'S MOTION FOR SANCTIONS
AGAINST PLAINTIFF AND ITS ATTORNEY PURSUANT TO
<u>RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................2

FACTS ........................................................................................................................3

ARGUMENT ..............................................................................................................10

   I. THERE IS NO EVIDENTIARY SUPPORT FOR THE FACTUAL
   CONTENTIONS IN THE THIRD AMENDED COMPLAINT.....................................10

   II. GLOBAL'S SOLE CAUSE OF ACTION FOR
   COMMON LAW FRAUD IS LEGALLY FRIVOLOUS..............................................13
      A.   Global Has Not Plead Common Law Fraud with
            Sufficient Particularity under New York Law or Rule 9(b) ..........................15
      B.   Global Cannot Transform a Breach of
            Contract Claim into a Claim for Fraud..........................................................21
      C.   Global Has Failed to Allege Loss Causation. ...............................................22

CONCLUSION............................................................................................................25

Defendant Xethanol Corporation ("Xethanol")[1] respectfully submits this memorandum of law in support of its motion pursuant to Rule 11 of the Federal Rules of Civil Procedure for sanctions against Plaintiff Global Energy & Management, LLC ("Global") and its attorney for filing a false and frivolous pleading.

## PRELIMINARY STATEMENT

In this classic strike suit against a public company, plaintiff originally pled damages of $10 million and named nine of Xethanol's current and former directors, officers and employees as defendants. But when Xethanol challenged that damage figure and the Court raised the specter of Rule 11, the damages demand suddenly became $250,000. Global's utter lack of respect for Rule 11 is similarly shown in its inclusion of five individuals as defendants, even though Plaintiff's Counsel stated he had intended to drop three of them but did not have time, and made no allegations as to two others. This is now Global's fifth version of the legal equivalent of throwing a pot of spaghetti at the wall to see what sticks. Despite Xethanol's many communications with Plaintiff's Counsel detailing the indisputable facts and legal deficiencies in Global's four earlier complaints, the central factual allegation of the Third Amended Complaint (in fact, Global's fifth complaint) – that Global invested $250,000 in a joint venture with Xethanol – is false; neither Global nor its counsel has any good faith basis to support it. Global's claim for fraud is legally without merit. Plaintiff's cavalier invocation of federal jurisdiction should not be tolerated. Xethanol

---

[1]    Defense counsel represents; Global has not served any of the individual defendants.

therefore requests that this Court grant its Rule 11 motion against Plaintiff's Counsel and Global, award Xethanol its attorneys' fees and costs and dismiss the Third Amended Complaint with prejudice.

## FACTS

As the facts detailed below demonstrate, the Court has given Global every chance to "get it right"; Global has amended its complaint four times. From the very beginning, Xethanol has attempted to highlight for Global the public documents that contain critical facts as well as the case law under which Global's legal claim fails.[2]

Global filed its original complaint, dated November 23, 2007, with the Clerk of the Court on December 7, 2007. That Complaint appeared to assert a claim of common law fraud against Xethanol and individual defendants (the "Original Complaint"). ( Harrison Aff. ¶ 2, Ex. A) Plaintiff's Counsel sent a copy of the Original Complaint to Xethanol's outside counsel, but never served it on any defendant. By letter, dated November 27, 2007, Xethanol asked Global to withdraw the Original Complaint, because it did not state a "cause of action under New York law," and there was no factual basis for naming at least five of the nine individual defendants in the Original Complaint based on their dates of affiliation with Xethanol and/or the fact that certain individuals were not officers or directors. (Id. ¶ 3, Ex. B) Xethanol further advised that, if the Original Complaint were not withdrawn, Xethanol would seek "sanctions pursuant to Rule 11(c)(1)(A)." (Id.)

---

[2]     Xethanol also submits the Affidavit of Katherine B. Harrison, sworn to on June 17, 2008 (the "Harrison Aff."), which attaches documents relevant to its motion, and the Affidavit of Franz Skryanz, sworn to on June 12, 2008 (the "Skryanz Aff.").

3

By letter, dated November 29, 2007, Plaintiff's Counsel wrote that he had amended the "complaint to plead identities and corporate positions upon information and blief [sic]," adding the *non sequitur* that, "[a]lthough people changed with the course of time, the misrepresentations continued." (Harrison Aff. ¶ 4, Ex. C)  He further stated that

> [i]f, in the course of pretrial discovery, evidence shows that plaintiff's belief is incorrect, we will dismiss as to any individual or individuals who played no part.  Until then, we are maintaining our initial position.

(<u>Id</u>.)  A copy of the First Amended Complaint, dated November 23, 2007 (the "First Amended Complaint"), was enclosed with the letter.  (<u>Id</u>., Ex. D)[3]

By letter, dated January 16, 2008, Xethanol asked Plaintiff's Counsel to withdraw the First Amended Complaint, which consisted of the same single cause of action in common law fraud and stated that; if Global refused, then Xethanol would move for Rule 11 sanctions.  (Harrison Aff. ¶ 7, Ex. F at 4)  That letter described some of the First Amended Complaint's legal and factual deficiencies.

With respect to the factual deficiencies, Xethanol stated, for example, that some of the defendants did not become officers or directors of Xethanol until after the alleged fraudulent statements were made (Louis B. Bernstein and David Ames ).  Xethanol advised Plaintiff's Counsel that

> there is a surfeit of publicly-available information (<u>e.g.</u>, Xethanol's SEC filings which are available on its website and other publicly available databases) confirming that several of the defendants you have named in your pleading should be withdrawn.

---

[3]    On January 7, 2008, Plaintiff's Counsel filed the Amended Complaint, which was actually the second amended complaint, with the Court. (Harrison Aff., Ex. E) The Amended Complaint was never served on Xethanol.

4

(Id. at 1-2)

        With respect to the legal deficiencies, Xethanol stated that Global had not stated a cause of action for fraud, citing case law relating to Rule 9(b).  (Harrison Aff. ¶ 7, Ex. F at 2)  Xethanol advised Plaintiff's Counsel, *inter alia*, that

> if more than one defendant – as here – is alleged to have participated in a fraudulent scheme, the complaint must allege facts that specify <u>each</u> defendant's actions in furtherance of the fraud; general allegations against the defendant "group" are insufficient and do not meet the pleading requirements of Rule 9(b).

(Id. at 3 (emphasis in original))

        Thereafter, on or about February 12, 2008, Global filed a Motion for Leave to File a Second Amended Complaint and Certification of Robert A. Vort in Support of Plaintiff's Motion for Leave to File Second Amended Complaint ("Vort Cert.").  (Harrison Aff. ¶ 8, Ex. G) The Vort Cert. provided in relevant part:

> 4.    . . . [Xethanol] wrote to me [Plaintiff's Counsel] on January 16, 2008 identifying perceived deficiencies in the amended complaint, particularly focusing on the specificity requirement of Fed.R.Civ.P. 9(b).
>
> 5.    Rather than drawing the proverbial "line in the sand," I have prepared a second amended complaint with greater specificity in the hope of avoiding a motion on this ground.

(Id.)  The Court granted Global's motion by endorsement on March 19, 2008.  (Harrison Aff. Ex. H)  On or about March 20, 2008, Global served the Second Amended Complaint on Xethanol.

        By letter, dated March 27, 2008, Xethanol asked Global to withdraw the Second Amended Complaint, which still alleged the same single cause of action for

common law fraud, and Xethanol again advised that it would move for sanctions pursuant to Rule 11 if Global refused to do so.  (Harrison Aff. ¶ 11, Ex. J at 4)  Xethanol stated that the Second Amended Complaint was "identical to the First Amended Complaint to which we [previously] objected, except that [Global] added subparagraphs 11(d) and 11(g) through (l)."  (Id. at 1)  Xethanol detailed many of the deficiencies of the Second Amended Complaint, summarized as follows:

- Some of the misstatements on which Global supposedly relied occurred after Global allegedly invested $250,000 in NewEngland.

- Global did not assert allegations of wrongdoing against three of the individual defendants (Thomas J. Endres, David Kreitzer and John Murphy); two of the other individual defendants allegedly made fraudulent statements after Global supposedly invested $250,000 (Ames and Bernstein).

- The Second Amended Complaint did not allege with specificity the fraudulent statements made, which individual defendants made those statements to which Global employee on what dates, and where and when they were allegedly made.

- Global provided no basis for how Global's alleged investment of $250,000 resulted in damages "exceeding $10,000,000.00" and did not allege loss causation.

- Even though the relationship between Global and Xethanol was based on a contract, Global asserted a cause of action for fraud, which, based on the parties' contractual relationship, case law does not allow.

(Id.)

Global refused to withdraw or amend the Second Amended Complaint.  As a result, by letter, dated April 21, 2008, Xethanol requested the Court's permission to file a motion to dismiss that Complaint pursuant to Fed. R. Civ. P. Rules 8(a), 9(b) and 12(b)(g).  (Harrison Aff. ¶ 12, Ex. K)

By letter, dated April 22, 2008, Global opposed Xethanol's request. (Harrison Aff. ¶ 13, Ex. L)  Plaintiff's Counsel represented that Global had invested $250,000 in NewEnglandXethanol, LLC ("NewEngland") on June 23, 2006 (id. at 1) (even though, as of June 26, 2006, Global apparently had not set up a bank account for NewEngland, and Xethanol has no record of a $250,000 investment having been made on that (or any other) date (Skryanz Aff. ¶¶ 2,4))  Plaintiff's Counsel did not explain Global's alleged damages of $10,000,000.  Plaintiff's Counsel represented that certain defendants, supposedly officers and directors of Xethanol, were "personally liable for misstatements in documents filed with the Securities and Exchange Commission." (Harrison Aff., Ex. L at 2)[4]  Plaintiff's Counsel conceded that Xethanol had "correctly state[d] that the [Second Amended C]omplaint [did] not state the time and place of the representations which are the subject of paragraphs 10 and 11." (Id. at 2)  Plaintiff's Counsel then stated that "[t]o require a date by date recapitulation [when alleging common law fraud against defendants] is very difficult and perhaps impossible.  Such a requirement of time, date and place applied to a situation such as this case presents is [sic] a perversion of the federal rules. . . . "  (Id. at 3)  Plaintiff's Counsel did not address Xethanol's legal arguments that Global had not alleged loss causation, or that Global could not assert an action for common law fraud when the parties' relationship was based on contract.  (Id. at 3)

In its letter ruling, dated May 1, 2008, the Court gave Plaintiff's Counsel

---

[4]    Plaintiff's Counsel made that affirmative representation even though, in the Second Amended Complaint, he represented that he did not know which of the individual defendants were officers or directors of Xethanol: "Upon information and belief, [all the named individual defendants] were either directors, officers or employees of Xethanol at all  times relevant to this action."  (Harrison Aff., Ex. I ¶ 9)

7

> a final opportunity to amend his complaint. . . , if he believes he
> can do so consistently with Fed. R. Civ. P. 11 and in a fashion
> that addresses the problems identified by defendants.  We do
> so in the interest of avoiding an unnecessary round of motion
> practice.  Further, having been afforded the opportunity to
> amend its complaint in response to defendants' submission,
> plaintiff should not anticipate being granted a further
> opportunity to amend, should we find that there is merit in
> some or all of defendants' arguments.

(Id. ¶ 14, Ex. M (emphasis added))

Thereafter, on or about May 15, 2008, Global served and filed the Third Amended Complaint now before the Court. (Harrison Aff. ¶ 15, Ex. N) However, it is clear that Global has not addressed "the problems identified by defendants" in the Third Amended Complaint, as instructed by the Court.  Global dropped its $10,000,000 damages claim, reducing its damages to an alleged $250,000 investment, plus lost profits and consequential damages.  But simply pleading that Global invested $250,000 in NewEngland does not make the Complaint compliant with Rule 11.  Global removed Endres, Kreitzer and Murphy as defendants from the caption, but those men are still named as defendants in the body of the Third Amended Complaint – this, even though Plaintiff's Counsel has acknowledged that Global has no valid claims against them. (Harrison Aff. ¶ 16, Ex. O) Global dropped the allegations relating to events occurring after Global allegedly invested $250,000 in NewEngland, but did not drop as defendants Ames and Bernstein, even though there are no allegations of wrongdoing directed against them in the Third Amended Complaint.

Global also did not cure in the Third Amended Complaint "the [following] problems identified by defendants" in the April 21, 2008 letter to the Court: (a) Global does not set forth the specific allegations of fraudulent statements made, which individual

8

defendants made those statements to which Global employee on what dates, and where and when they were allegedly made; (b) "though the relationship between the parties is based on their contract, Global improperly attempts to 'transform a breach of contract claim into a fraud claim,' which it may not do under the case law"; and (c) Global did not allege loss causation.  (Harrison Aff., Ex. K)

By letter, dated May 23, 2008, to Plaintiff's Counsel, Xethanol, in an effort to avoid "an unnecessary round of motion practice," described Global's continuing Rule 11 problems with the Third Amended Complaint.  Once again, Xethanol advised Global that, if it did not withdraw the Complaint, Xethanol intended to serve a Motion under Rule 11 . (Harrison Aff. ¶ 16, Ex. O)  Xethanol described the Rule 11 problems as follows:

> [W]e have seen no substantiation at all for Global's allegation. . . that it invested $250,000 in New England Xethanol; we believe this allegation to be false.
>
> In addition, though you changed the caption to remove the names of Thomas J. Endres, David Kreitzer and John Murphy, paragraph 9 still refers to those individuals as "defendants."  You told me on the phone that it was your intention to drop them as defendants in the action.  Similarly, as you have now dropped all allegations of wrongdoing after June 2006, and have alleged no wrongdoing whatsoever by David Ames or Louis Bernstein, those defendants should be dropped as well.
>
> It is unclear whether Global attempts to plead a fraud claim or a contract claim but we do not think Global has stated a valid claim under either theory, for the reasons we have discussed in our prior correspondence with you concerning earlier versions of the complaint.

(Id.)

Global did not respond to this letter.  Pursuant to the "safe harbor" provision of Rule 11, Xethanol served this motion on Global 21 days before filing it with the Court to

give Global a chance to withdraw its Third Amended Complaint.  Global has not done so

and thus represents to the Court that this pleading complies with Rule 11.  It does not.

## ARGUMENT

### I.

### THERE IS NO EVIDENTIARY SUPPORT FOR THE FACTUAL CONTENTIONS IN THE THIRD AMENDED COMPLAINT.

Rule 11(b)(3) provides in relevant part:

By presenting to the court a pleading, written motion, or other paper. . . an attorney. . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . .

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

Fed. R. Civ. P. 11(b)(3).  Xethanol has challenged Global's complaints four times for

containing false factual allegations.  Four times Xethanol has sent Global letters describing

the various problems in four of Global's five complaints and has had numerous

conversations with Plaintiff's Counsel discussing those problems.  (Harrison Aff. ¶¶ 3, 7,

11, 16, Exs. B, F, J, O).[5]  Xethanol has quickly communicated to Plaintiff's Counsel that

the allegations were baseless and should be withdrawn.  Xethanol has served, but did not

file, a Rule 11 motion, and thereby has followed the procedure of Rule 11.  Profile

Publishing & Mgmt. Corp. APS v. Musicmaker.com, Inc., 242 F. Supp.2d 363, 366

(S.D.N.Y. 2003)(Owen, J.).

---

[5]    Plaintiff's Counsel actually drafted five complaints; however, Plaintiff's Counsel never served the Amended Complaint, filed with the Court on January 7, 2008, on Xethanol.  (Harrison Aff. ¶ 16, Ex. E)

Despite drafting five complaints over the course of six months, allegedly in part to correct the factual inaccuracies, Global's Third Amended Complaint still contains false allegations. "Rule 11(b)(3) requires an attorney to continuously make sure that his allegations have evidentiary support. After investigation and discovery, continued prosecution of a case where it would appear to a reasonable attorney that the factual allegations cannot be supported can subject an attorney to sanctions." L.I. Head Start Child Development Services, Inc. v. Frank, 165 F. Supp.2d 367, 372 (E.D.N.Y. 2001)(Spatt, J.); see also Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1469-70 (2d Cir. 1988), rev'd in part on other grounds, 493 U.S. 120 (1989); Levine v. Co. of Westchester, 164 F.R.D. 372, 374 (S.D.N.Y. 1996)("Rule 11, which is designed to deter baseless filings and curb abusive litigation, imposes an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of claims." Id. (citations omitted))(Sprizzo, J.). Moreover, "[t]he mental state applicable to liability for Rule 11 sanctions initiated by motion is objective unreasonableness, i.e., liability may be imposed if the lawyer's claim to have evidentiary support is not objectively reasonable." In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003)(Newman, J.)

Xethanol submits that neither Global nor its attorney has "conduct[ed] a reasonable inquiry into the factual . . . viability of claims." Levine, 164 F.R.D. at 374.[6] First, Global alleges that it

---

[6]    Global's claim in its first four complaints that it suffered damages of $10 million is an example of the failure of Global and its attorney to conduct a "reasonable inquiry" into the factual allegations. Xethanol repeatedly advised Global that that amount was specious. Apparently conceding that the number was fabricated, Plaintiff's Counsel withdrew it when the Court advised Plaintiff's Counsel to "address[] the problems identified by defendants" in the Second Amended Complaint "consistent[] with Fed.R.Civ.P. 11."

> relied on the representations of defendants to its detriment
> and, in reliance on their representations, invested $250,000
> into New England Xethanol, a limited liability company formed
> by Global and by Xethanol to engage in the biomass to bio-
> fuels business.

(Harrison Aff., Ex. N ¶ 13)

On June 23, 2006, Lee Tyrol, Global's President and CEO, entered into an Organizational Agreement with Xethanol regarding NewEngland in which Global agreed, *inter alia*, to invest $1.5 million in NewEngland in three installments, the first one of which was to be for $250,000.  (<u>See</u> Harrison Aff., Ex. Q)  Xethanol is not aware of Global investing any money, let alone $250,000, in NewEngland or Xethanol.  To the best of Xethanol's knowledge, Global never made that first installment in NewEngland or Xethanol (Skryanz Aff. ¶¶ 2, 4), even though Plaintiff's Counsel represented to the Court that Global did so on June 23, 2006.  (Harrison Aff., Ex. L at 1)  In <u>Big Brother Sportswear, Inc. v. Third Rail, Inc.</u>, 1997 WL 1113645 *1 (S.D.N.Y. Dec. 2, 1997)(Patterson, J.), the court sanctioned plaintiff in part, because "Plaintiff's Counsel was put on notice" of the factual deficiencies, and "plaintiff failed to show that its factual contentions contradicted by defendants' opposing affidavits and exhibits had evidentiary support or were likely to have evidentiary support upon further discovery. . . ."  Global should be required to provide evidence of its alleged $250,000 investment in NewEngland.[7]

---

[7]    Global claims that this Court has jurisdiction over the instant action based on the diversity statute, 28 U.S.C. §1332, which requires the amount in controversy to exceed $75,000, exclusive of interest and costs. (Third Amended Complaint ¶¶ 1-4, Harrison Aff., Ex. N)  However, because there is no proof that Global made an investment of $250,000 in NewEngland, and because it alleges no other specific damages, there is a question whether this case satisfies the jurisdictional amount requirement. <u>See</u> <u>Tongkook America, Inc. V. Shipton Sportswear Co.</u>, 14 F.3d 781, 784 (2d Cir. 1994)("'A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a "reasonable probability" that the claim is in excess of the statutory jurisdictional amount'"; <u>see also</u>

Moreover, while Global has removed three of the individual defendants (Endres, Kreitzer and Murphy) from the caption, it did not remove all references to them as defendants from the body of the Third Amended Complaint. (Harrison Aff., Ex. N ¶ 9; Ex. O)  In addition, there are no allegations of wrongdoing whatsoever against individual defendants Ames and Bernstein.  The Third Amended Complaint simply says that, "[u]pon information and belief, defendants Louis Bernstein and David Ames. . . were either directors, officers or employees of Xethanol at all times relevant to this action."  (Id., Ex. N ¶ 9) See In re GeoPharma, Inc. Securities Litigation, 399 F. Supp.2d 432, 445 (S.D.N.Y. 2005)(lawsuit dismissed against chairman "not mentioned at all in the Complaint except to name him as a defendant.")(Scheindlin, J.).

Plaintiff's Counsel has had more than six months to review the accuracy of its factual allegations.  As required by Rule 11, Xethanol gave Global 21 days after serving these motion papers before filing them in court.  See O'Brien v. Alexander, 898 F. Supp. 162, 176 (S.D.N.Y. 1995), aff'd, 101 F.3d 1479 (2d Cir. 1996).  Because Plaintiff's Counsel and Global refuse to withdraw or correct the false statements, they should be sanctioned.

## II.

### GLOBAL'S SOLE CAUSE OF ACTION FOR
### COMMON LAW FRAUD IS LEGALLY FRIVOLOUS.

Rule 11(b)(2) provides that, in any document presented to the court, the attorney is certifying that "the claims, defenses, and other legal contentions are warranted

---

Moore v. Betit, 511 F.2d 1004, 1006 (2d Cir. 1975).); see also Escobar v. Zapp, 2006 WL 2661173 *4 (S.D.N.Y. Sept. 13, 2006)(awarding Rule 11 sanctions for improperly invoking court's jurisdiction)(Gorenstein, Mag. J.).

by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. . . ." Id.

> Rule 11(b)(2) "establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Fed. R. Civ. P. 11 advisory committee note to 1993 amendments. "Although arguments for a change of law are not required to be specifically so identified, a contention that is so identified should be viewed with greater tolerance under the rule."

Margo v. Weiss, 213 F.3d 55, 64 (2d Cir. 2000); see also Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir. 1994)(legal position is frivolous if, under objective standard of reasonableness, no chance of success and no reasonable argument for extending, modify or reversing the law as it stands).  Courts in this Circuit "have found sanctions appropriate in cases where a plaintiff files a claim that is clearly deficient and where he advances no plausible argument in favor of validity." de la Fuente v. DCI Telecommunications, Inc., 259 F. Supp.2d 250, 262 (S.D.N.Y. 2003)(McMahon, J.); see also Burekovitch v. Hertz, 2001 WL 984942 *13 (E.D.N.Y. July 24, 2001)(finding Rule 11(b)(2) violation when plaintiff filed complaint clearly barred by legislative act and, when informed claim was without merit, refused to withdraw it or provide court with any reason why law should be modified or extended)(Glasser, J.).

> On a motion to dismiss for failure to state a claim, the issue is whether the plaintiff has established a "plausible entitlement to relief."  In order to survive dismissal, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient to raise a right to relief above the speculative level," and justify "a reasonable expectation that discovery will reveal evidence" of liability. . . .  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

14

Matsumura v. Benihana Nat'l Corp., 542 F. Supp.2d 245, 251 (S.D.N.Y. 2008)(Buchwald, J.).

When it requested permission to move to dismiss the Second Amended Complaint for failure to state a valid fraud claim in April 2008, Xethanol raised three main points: (a) the Second Amended Complaint's failure to specify each defendant's allegedly fraudulent actions; (b) Global's attempt to transform a contract claim into a fraud claim, which it may not do under the case law; and (c) Global's failure to plead loss causation. (Harrison Aff. Ex. K) Despite the Court's direction to address the problems Xethanol raised "consistently with Fed. R. Civ. P. 11," the Third Amended Complaint did not address those three legal infirmities sufficiently.  Nor did Plaintiff's Counsel respond or withdraw Global's pleading when Xethanol wrote one last time on May 23, 2008 in an effort to avoid the Rule 11 motion Xethanol now makes.

## A.    Global Has Not Plead Common Law Fraud with Sufficient Particularity under New York Law or Rule 9(b)

Global "must not only plead the elements of the relevant [fraud] claim under New York law [in this diversity lawsuit], but [it] . . . must also meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that, '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" Apace Communications, Ltd. v. Burke, 522 F. Supp.2d 509, 514 (W.D.N.Y. 2007)(sweeping, undifferentiated allegations did not comply with Rule 9(b)'s pleading requirements where complaint alleged that multiple defendants, sometimes in concert with unnamed "others," made misrepresentations about some general subject matter "around" certain periods of time)(Larimer, J.).

15

To state a claim for fraud in New York, a plaintiff must allege (a) a material false representation of an existing fact, (b) made with knowledge of its falsity, (c) with an intent to defraud, (d) reasonable reliance and (e) damages. Cohen v. Koening, 25 F.3d 1168, 1172 (2d Cir. 1994); Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 176 N.Y.S.2d 259 (1958). Although Rule 9(b) permits knowledge to be averred generally, the Second Circuit has warned that this aspect of the Rule "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). A complaint must, which the Third Amended Complaint does not, "'allege facts that give rise to a strong inference of fraudulent intent.'" Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 663 (2d Cir. 1997), quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Alleging only in paragraph 11 of the Third Amended Complaint, for example, that "[t]he representations made by defendants to Tyrol and the other [unnamed] Global representative were false and known by defendants to be false when they were made" (Harrison Aff., Ex. N ¶ 11) does not muster the facts required to fulfill the requirements of Rule 9(b) for pleading fraud with specificity. This is even more the case when there are no allegations of wrongdoing whatsoever against at least five of the individual defendants still named and/or mentioned in the Third Amended Complaint (Endres, Ames, Bernstein, Kreitzer and Murphy).

If more than one defendant – as here – is alleged to have participated in a fraudulent scheme, the complaint must allege facts specifying each defendant's actions in furtherance of the fraud. General allegations against the defendant "group" are insufficient and do not meet Rule 9(b)'s pleading requirements. Mills v. Polar Molecular

Corp., 12 F.3d 1170, 1175 (2d Cir. 1993); DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

The Third Amended Complaint must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Matsumura, 542 F. Supp.2d at 251, citing Mills, 12 F.3d at 1175; see also Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). The Second Circuit repeatedly has held that this requires more than conclusory allegations that a defendant's conduct was fraudulent. See, e.g., Acito v. IMCERA Group, Inc., 47 F.3d 47 (2d Cir. 1995); Shields, 25 F.3d at 1128. Indeed, "[t]he primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir.), cert. denied, 531 U.S. 1012 (2000), quoting Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990).

Paragraph 10 of the Third Amended Complaint refers generally to misrepresentations the individual defendants allegedly made "to Lee Tyrol and other representatives of Global orally on many telephone calls and in innumerable meetings. . . ." (Harrison Aff., Ex. N ¶ 10)  It sets forth certain "facts" "Defendants [allegedly] misrepresented," none of which refer to a particular individual. Id.  Paragraph 10 then describes eight alleged "misrepresentations."  Global does not "'explain why the [eight] statements were fraudulent.'" Novak, 216 F.3d at 306, quoting Shields, 25 F.3d at 1128; accord Acito, 47 F.3d at 51. To satisfy Rule 9(b), Global must allege – and it has not done

17

so – how the statements at issue were false and facts giving rise to a strong inference of fraudulent intent.  <u>San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Companies, Inc</u>., 75 F.3d 801, 812 (2d Cir. 1996).

Moreover, to the extent that these eight statements do not refer to a particular defendant, Rule 9(b)

> "[d]oes not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"

<u>Apace</u>, 522 F. Supp.2d at 517, <u>quoting</u> <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007), <u>quoting</u> <u>Haskin v. R.J. Reynolds Tobacco Co.</u>, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998); <u>see</u> <u>also</u> <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young</u>, 1994 WL 88129 *7 (S.D.N.Y. Mar. 15, 1994)("Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b).")(Haight, J.).

The eight subparagraphs in the Third Amended Complaint lack the specificity Rule 9(b) requires.  Five of the subparagraphs have nothing to do with "telephone calls" or "innumerable meetings."  They are press releases or brochures (¶¶ 10(a), (b), (c)), a Form 10KSB (¶10(e)) and a magazine article (¶ 10(f)).  None of these documents mentions any of the individual defendants with the exception of two (¶¶ 10(b)(press release), (f)(magazine article, which defendants did not author)), which mention Individual Defendant Christopher D'Arnaud-Taylor.

The remaining three statements also run afoul of Rule 9(b).  First, none of them mentions five of the individual defendants, namely, Bernstein, Ames, Endres, Kreitzer

18

and Murphy, at all.  Global refers to them merely "defendants" and ascribes no wrongdoing
to any of them.

      Second, individual defendants Lawrence S. Bellone and Robin Buller are
mentioned in only two subparagraphs, namely, ¶¶ 10(g) and 10(h).  To the extent Bellone
and Buller are mentioned in ¶10(g), Global does not state they made any specific
misrepresentations to Global or its representatives, alleging instead:

> Bellone and Buller participated in the conversations,
> contradicted nothing said by Taylor and by Langberg and
> independently confirmed their beliefs that this process of
> converting garbage to ethanol was feasible and would be very
> profitable.

(Harrison Aff., Ex. N ¶ 10(g).  To the extent Bellone and Buller are mentioned in ¶10(h),
Global simply states that they "again stated that Xethanol had the technology with which
to engage in the cellulosic production of ethanol on a commercially reasonable basis." (Id.
¶ 10(h))  Moreover, the statements vaguely ascribed to Bellone and Buller are "mere
promissory statements about what is to be done in the future." Spencer Trask Software
& Information Services LLC v. Rpost Int'l Ltd., 383 F. Supp.2d 428, 453 (S.D.N.Y.
2003)(Leisure, J.); "[T]his process of converting garbage to ethanol was feasible," and
"Xethanol had the technology with which to engage in the cellulosic production of ethanol."
(Harrison Aff., Ex. N ¶¶ 10(g), 10(h))  See also First Bank of Americas v. Motor Car
Funding, Inc., 257 A.D.2d 287, 690 N.Y.S.2d 17 (1st Dep't 1999)(observing that fraud claim
should be dismissed as redundant when the only fraud alleged is that defendant was not
sincere when it promised to perform under the contract); Nasik Breeding & Research Farm
Ltd. v. Merck & Co., 165 F. Supp.2d 514, 530 (S.D.N.Y. 2001)("Terms like 'very high
productive traits,' which do not set forth a concrete representation as to the company's

future performance, are in the nature of commercial puffery and cannot form the basis for a fraud claim here." Id.)(Schwartz, J.).

Finally, while individual defendants Taylor and Jeffrey Langberg are mentioned in all three subparagraphs, like Bellone and Buller, the statements they allegedly made are promissory statements of potential future events. "Taylor said that he could 'make a plant' producing cellulosic ethanol that would make money and be profitable in Tyrol's front yard." (Harrison Aff., Ex. N ¶ 10(d)) "Taylor drew another flow chart on a white board demonstrating that garbage could be placed within machinery which would [make] ethanol. Langberg stated to Tyrol, DiBella and Barton that this technology would 'make a fortune' for Global and for Xethanol." (Id. ¶ 10(g)) "Taylor, Langberg, Bellone and Buller again stated that Xethanol had the technology with which to engage in the cellulosic production of ethanol on a commercially profitable basis." (Id. ¶ 10(h)) Moreover, Global's allegation that it met with a Joseph J. Grano, Jr., who was not an officer or director of Xethanol and is alleged to be only "an advisor to the board of directors of Xethanol," has nothing to do with alleged misrepresentations by defendants.

Global's vague allegations of fraud by "defendants" must be dismissed. "The knowledge or intent of the speaker may be averred generally; however, conclusory allegations are not permitted." Spithogianis v. Haj-Darwish, 2008 WL 82188 *6 (S.D.N.Y. Jan. 7, 2008)(Francis, Mag. J.); see also Travelers Indemnity Co. of Illinois v. CDL Hotels USA, Inc., 322 F. Supp.2d 483, 499-500 (S.D.N.Y. 2004)(Mukasey, J.). "The allegations' impermissible failure to distinguish" among the Defendants "mandates dismissal under both Rule 9(b) and Rule 8(a)." Merrill Lynch, 1994 WL 88129 at *20; see also In re Crude Oil Commodity Litigation, 2007 WL 2589482 *1 (S.D.N.Y. Sept. 7, 2007 (Buchwald,

J.)(Court upheld motion to dismiss amended complaint; defendants argued that "the conclusory nature of the [Third Amended Complaint] not only fail[s] to satisfy the heightened pleading standard of Rule 9(b), but also the notice pleading standard of Rule 8(a).").

**B. Global Cannot Transform a Breach of Contract Claim into a Claim for Fraud.**

Global alleges that it "invested $250,000 into New England Xethanol, a limited liability company formed by Global and by Xethanol to engage in the biomass to biofuels business." (Harrison Aff., Ex. N ¶ 13)  It is well-settled under New York law that a "contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations." <u>Rocanova v. Equitable Life Assurance Society of the United States</u>, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 353 (1994); <u>see</u> <u>also</u> <u>New York University v. Continental Ins. Co.</u>, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 288 (1995)("[W]here a party is merely seeking to enforce its bargain, a tort claim will not lie."); <u>Int'l Cabletel Inc. v. Le Groupe Videotron Ltee</u>, 978 F. Supp. 483, 486-87 (S.D.N.Y. 1997)(Sotomayor, J.); <u>Global Media Corp. v. Gateway Distributors, Ltd.</u>, 2007 WL 2589535 *4 (S.D.N.Y. Aug. 28, 2007)(Berman, J.); <u>Mills</u>, 12 F.3d at 1176 ("contract may be breached for legitimate business reasons and contractual breach, in and of itself, does not bespeak fraud, and generally does not give rise to tort damages").

This business relationship between Xethanol and Global is clearly based on contract, namely, the Operational Agreement involving NewEngland.  (Harrison Aff., Ex. Q)  Global has no valid contract claim, because it did not make its payment under the agreement and otherwise failed to perform.  But that hardly entitles Global to shift to a

21

fraud claim. Global improperly attempts to "transform a breach of contract claim into a fraud claim, which it may not do." Kulas v. Adachi, 1997 WL 256957 *9 (S.D.N.Y. May 16, 1997)(Mukasey, J.); see also Global Media, 2007 WL 2589535 at *4; Kulas, 1997 WL 256957 at *9. Global's fraud claim is thus untenable and should thus be dismissed.

**C.    Global Has Failed to Allege Loss Causation.**[8]

Under New York law, common law fraud is "'a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, which causes injury.'" Solar Travel Corp. v. Nachtomi, 2001 WL 641151 *4 (S.D.N.Y. June 8, 2001)(Schwartz, J.). "Loss causation is an essential element" of the common law fraud claim. Glidepath Holding B.V. v. Spherion Corp., 2007 WL 2176072 *15 (S.D.N.Y. July 26, 2007)(Karas, J.). "Loss causation 'is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.'" Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005), quoting Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 198 (2d Cir. 2003). "Loss causation is causation in the traditional 'proximate cause' sense – the allegedly unlawful conduct caused the economic harm." AUSA Life Ins. Co. v. Ernst & Young, 206 F.3d 202, 209 (2d Cir. 1986). "Similar to loss causation, the proximate cause element of common law fraud require that plaintiff adequately allege a causal connection between defendants' non-disclosures" and plaintiff's alleged loss. Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1495 (2d Cir. 1992)("To establish loss

---

[8]    In Hunt v. Enzo Biochem, Inc., 471 F. Supp.2d 390, 408-09 (S.D.N.Y. 2006)(Scheindlin, J.), the Court held that the pleading of loss causation is governed by Rule 8(a).

causation a plaintiff must show, that the economic harm that it suffered *occurred as a result* of the alleged misrepresentations." Id. (emphasis in original)); see also In re Faleck & Margolies, Ltd., 1995 WL 33631 *11 (S.D.N.Y. Jan. 30, 1995)(Kram, J.); Bennett v. U.S. Trust Co. of New York, 770 F.2d 308, 313 (2d Cir. 1985), cert. denied, 474 U.S. 1058 (1986); In re Northern Telecom Ltd. Sec. Litigation, 116 F. Supp. 2d 446, 455-56 (S.D.N.Y. Sept. 28, 2000)(Cederbaum, J.).

   Global's only allegation of injury in the Third Amended Complaint is the statement that, based on "representations of defendants," Global "invested $250,000 into New England Xethanol." (Harrison Aff., Ex. N ¶ 13) Global demands "defendants to repay" that alleged $250,000 and also to pay for "lost profits" and "consequential damages." (Id. at 7)  Global does not explain how press releases, a magazine article or a 10K caused its alleged injury.  Moreover, Global does not explain how five individual defendants (Ames, Bernstein, Enders, Kreitzer or Murphy) – against whom no wrongdoing is alleged – injured Global.   Global does not plead how Bellone and Buller, who made no specific misrepresentations, caused Global's supposed injuries.  Nor does Global explain how "mere promissory statements about what is to be done in the future," Spencer, 383 F. Supp.2d at 453, injured Global.

> Courts in this District and this Circuit do require more than merely conclusory allegations of injury to state a claim for fraud.  These Courts have required that the plaintiffs allege both transaction and loss causation, and the plaintiffs include facts in their complaint from which loss causation can be inferred.

Id., 383 F. Supp.2d at 457.

Finally, Global may not recover lost profits or consequential damages to which it claims it is entitled. (Harrison Aff., Ex. N at 7) "The measure of damages for fraud is the actual pecuniary loss suffered as a result of the fraud, the so-called 'out-of pocket' rule." Kulas, 1997 WL 256957 at *10; see also Lama Holding v. Smith Barney Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80 (1996); Spencer, 383 F. Supp.2d at 456-57; Spithogianis, 2008 WL 82188 at *7.

> Under the "out-of-pocket" rule, a plaintiff's loss is the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." Thus, "there can be no recovery of profits which would have been realized in the absence of fraud."

Kulas, 1997 WL 256957 at *10.

Global's fraud cause of action must therefore be dismissed for failing to meet the requirements of Rules 8(a) and 9(b).

24

## CONCLUSION

For the reasons discussed above, Xethanol respectfully requests that this Court grant its Rule 11 motion against Plaintiff's Counsel and Global, award Xethanol its attorneys' fees and costs and dismiss the Third Amended Complaint with prejudice.

Dated:      New York, New York
            June 17, 2008

Respectfully submitted,

PADUANO & WEINTRAUB LLP

By:_____

Anthony Paduano (AP 8400)
Katherine B. Harrison (KH 9745)
Kathryn L. Bedke (KB 7855)
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
212-785-9100

Attorneys for Defendant
Xethanol Corporation