UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X

GLOBAL ENERGY AND MANAGEMENT, LLC,

                    Plaintiff,

          -v-

XETHANOL CORPORATION, CHRISTOPHER
D'ARNAUD-TAYLOR, JEFFREY LANGBERG,
LAWRENCE S. BELLONE and ROBIN
BULLER,

                    Defendants.

--------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

**MEMORANDUM AND ORDER**

07 Civ. 11049 (NRB)

     Plaintiff Global Energy and Management, LLC ("Global Energy" or "plaintiff"), brings this suit against defendants Xethanol Corporation ("Xethanol"), Christopher D'Arnaud-Taylor, Jeffrey Langberg, Lawrence S. Bellone and Robin Buller,[1] alleging fraudulent inducement.[2]  Defendant Xethanol now moves to dismiss pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  Xethanol further moves for sanctions against plaintiff and its counsel, pursuant to Rule 11.  For the

---

[1] During oral argument, plaintiff consented to the dismissal with prejudice of all but these four individual defendants.  (Oral Arg. Tr. at 12-14.)

[2] The Third Amended Complaint actually never expressly identifies the cause of action being brought.  In the briefs for the instant motions, the parties describe the cause of action at issue as a "fraud" claim.  We believe construing the claim as "fraudulent inducement" or "fraud in the inducement" is more precise.  See, e.g., 37 Am. Jur. 2d Fraud and Deceit § 2 (2008) ("A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation; the fraud relates not to the nature or purport of the contract but to the facts inducing its execution.").

reasons set forth below, Xethanol's motion to dismiss is granted. However, plaintiff is granted leave to amend its complaint one final time to address the pleading deficiencies in the Third Amended Complaint, provided that plaintiff's counsel pays $5,000 to Xethanol to partially offset its legal fees arising from the instant motion. Xethanol's motion for sanctions under Rule 11 is denied.

## BACKGROUND[3]

Global Energy is a Connecticut limited liability company. (Compl. ¶ 1.) Xethanol is a Delaware corporation. (Id. ¶ 2.) The complaint does not set forth the states of which the individual defendants are citizens, but it does allege that none is a Connecticut citizen (id. ¶ 4), and defendants do not argue otherwise.

Plaintiff claims that Xethanol and the individual defendants represented "orally on many telephone calls and in innumerable meetings that Xethanol could manufacture cellulosic ethanol (ethanol made from garbage and wood as opposed to ethanol made from corn or sugar) in a commercially profitable manner," that Xethanol "owned patents and other technology from which it could manufacture ethanol from bio-mass in a profitable

---

[3] The following facts have been drawn from the Third Amended Complaint ("Compl." or "complaint") and from Xethanol's Form 8-K filed June 23, 3006 (June 25, 2008 Affidavit of Katherine B. Harrison ("6/25/08 Harrison Aff.") Ex. C).

2

manner," and that it was "currently producing" six million gallons of ethanol per year. (Compl. ¶ 10.) The complaint lists eight instances between January 2005 and June 8, 2006 when defendants made such representations, including in Xethanol press releases, in an article appearing in Fortune Small Business magazine, in an SEC filing, and during three meetings between Global Energy and Xethanol employees at Xethanol's New York offices. (Id. ¶¶ 10(a)-10(h).)

On June 23, 2006, plaintiff entered into an "organizational agreement" and an "operating agreement" with Xethanol, pursuant to which they formed a Delaware limited liability company called NewEnglandXethanol, LLC ("NewEnglandXethanol"). (6/25/08 Harrison Aff. Ex. C at 3.) NewEnglandXethanol was created to "develop and operate facilities for the production of ethanol" in various New England states. (Id.) Global Energy agreed to contribute a total of $1.5 million toward the capitalization of NewEnglandXethanol in three installments -- an initial installment of $250,000 upon execution of the agreements; a second installment of $250,000 payable within 90 days thereafter, and a final installment of $1,000,000 payable whenever Xethanol and Global Energy approved NewEnglandXethanol's construction of the first ethanol-production facility. (Id.) Pursuant to the agreements, Global Energy and Xethanol were each to own a 50% membership interest

3

in NewEnglandXethanol.   (Id.)   In addition, Xethanol issued to
Global Energy a warrant to purchase 20,000 shares of Xethanol
common stock at a purchase price of $6.85 on or after June 23,
2007.   (Id.)

Plaintiff alleges that defendants made representations to
induce plaintiff to rely upon them, and that those
representations "were false and known by defendants to be false
when they were made." (Compl. ¶¶ 11-12.)  Plaintiff seeks the
following relief: (a) a judgment compelling defendants to repay
the $250,000 investment that plaintiff claims to have ultimately
invested in NewEnglandXethanol; (b) plaintiff's lost profits
stemming from that investment; (c) consequential damages; (d)
pre-judgment interest; (e) costs of the lawsuit; and (f) "such
other relief as the Court may hold just and equitable."   (Id. ¶
13.)

## DISCUSSION

On a motion to dismiss for failure to state a claim, the
issue is whether the plaintiff has established a "plausible
entitlement to relief." Bell Atlantic Corp. v. Twombly, -- U.S.
--, 127 S. Ct. 1955, 1974 (2007).  To survive dismissal, "the
plaintiff must provide the grounds upon which [its] claim rests
through factual allegations sufficient to raise a right to
relief above the speculative level," ATSI Commc'ns, Inc. v.

4

Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (internal quotation marks omitted), and justify "a reasonable expectation that discovery will reveal evidence" of liability, Bell Atl. Corp., 127 S. Ct. at 1959. In deciding a motion to dismiss, a court must accept as true the factual allegations of the complaint, drawing all reasonable inferences in the light most favorable to the plaintiff. See In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).

Under New York law,[4] to state a claim for fraudulent inducement, a plaintiff must allege (1) a representation of a material fact; (2) that was untrue; (3) that was known to be untrue or made with reckless disregard for the truth; (4) that was offered to deceive another or induce him to act; (5) upon which that other party relied to its injury. Aetna Cas. and

---

[4] Xethanol assumes that New York law governs this dispute (Memorandum of Law in Support of the Motion of Defendant Xethanol Corporation to Dismiss the Third Amended Complaint ("Mem.") at 4), while plaintiff contends that "it is unclear if New York law or Connecticut law governs (Brief in Opposition to Motion to Dismiss Third Amended Complaint ("Opp.") at 1). This question does not affect our ruling here because, as plaintiff notes (id.), the elements of plaintiff's claim are the same for both states. See, e.g., Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 135 (2d Cir. 1997) ("It is well-settled under Connecticut law that to prove fraudulent inducement, a party must show (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." (internal quotation marks omitted)).

Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 580 (2d Cir. 2005). Further, in alleging fraudulent inducement, a party must state the circumstances "with particularity." Fed. R. Civ. P. 9(b); Aetna Cas., 404 F.3d at 580. That is, a plaintiff must "[a]dequately specify the statements it claims were false or misleading, give particulars as to . . . [how the alleged statements] were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Miller v. Holtzbrinck Publishers, LLC, No. 08 Civ. 3508 (HB), 2008 WL 4891212, at *4 (S.D.N.Y. Nov. 11, 2008) (quoting Hoffenberg v. Hoffman & Pollock, 248 F. Supp. 2d 303, 310-11 (S.D.N.Y. 2003)).

Xethanol argues that although plaintiff has had three chances to amend its complaint, plaintiff's allegations still fail to satisfy Rule 9(b) because the complaint does not set forth how those statements are fraudulent. (Oral Arg. Tr. at 3.) We find Xethanol's argument persuasive on this point.

Of the eight allegedly false statements listed in the complaint, several are insufficient on their face to support a claim of fraudulent inducement. For instance, statements that "Xethanol Corporation seeks to become a leader in the emerging biomass-to-ethanol industry" (Compl. ¶ 10(c)), that Xethanol's "mission is to convert biomass that is currently being abandoned or land filled into ethanol" (id.), and that "the pooling of

6

Xethanol management with a world class scientific team . . . [would] accelerate development and deployment of its biomass technologies" (id. ¶ 10(b)) are forward-looking and not actionable. See, e.g., Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) ("[S]tatements will not form the basis of a fraud claim [under New York law] when they are mere 'puffery' or are opinions as to future events.").

As for the remaining statements, even if some parts of them could have been actionably false and misleading, plaintiff fails to explain in what respects the statements at issue were untrue. Instead, the complaint states simply, "The representations made by defendants to Tyrol and the other Global representatives were false and known by defendants to be false when they were made." (Compl. ¶ 11.)  Given that a central purpose of Rule 9(b) is to "provide detailed notice of the fraud claim to the defending party," plaintiff's blanket allegation of falsity here is simply too conclusory.   See Jeffrey A. Parness and Jerry E. Smith, Moore's Federal Practice § 9.03 (3d ed. 2008); see also Pilarczyk v. Morrison Knudsn Corp., 965 F. Supp. 311, 321 (N.D.N.Y. 1997) (conclusory allegations that statements in defendant's annual report were misleading were insufficient because complaint failed to specify exact statements claimed to be fraudulent and why they were fraudulent) (citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,

75 F.3d 801, 812 (2d Cir. 1996)).   Xethanol is entitled to know what statements plaintiff claims are untrue, and in what ways plaintiff alleges those statements are untrue.   The Third Amended Complaint does not provide this information.[5]

Having found that plaintiff's complaint does not satisfy Rule 9(b), we must next decide whether to grant Xethanol's motion to dismiss the case with prejudice.[6]   Xethanol argues that because plaintiff has been afforded three opportunities to correct the deficiencies in its complaint, it should not be given yet another bite at the apple.   This argument has some appeal, considering that Xethanol's lawyers have written plaintiff's counsel no fewer than four letters setting forth the Rule 9(b) pleading standard and identifying the numerous problems with plaintiff's various complaints.   (See June 17, 2008 Affidavit of Katherine B. Harrison in Support of Defendant Xethanol Corporation's Motion for Sanctions Pursuant to Rule 11 Exs. B, F, J, O.)

---

[5] Xethanol also argues that plaintiff fails to allege loss causation. We believe plaintiff's allegations on this point are sufficient. Stated simply, plaintiff is alleging that it invested $250,000 to acquire a joint stake in NewEnglandXethnanol based on certain representations by defendants, and that, because those representations proved to be false, plaintiff's stake in NewEnglandXethanol is now worthless.  It may very well be that plaintiff is incorrect, and it has not lost that sum.  Indeed, whether and to what extent plaintiff actually suffered an injury is a question on which plaintiff will ultimately bear the burden of proof at trial.  However, plaintiff's allegations regarding loss causation are sufficient to survive a motion to dismiss.  See also fn.9, infra.

[6] Because the motion to dismiss was brought solely on behalf of Xethanol, we do not address the question of whether plaintiff has failed to state a claim against any of the remaining individual defendants.

8

In considering Xethanol's argument, we are mindful of a fundamental precept of the American legal system -- that an attorney is an agent for his client, and thus the client is bound by failures of that attorney within the scope of his agency.   See Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962) (plaintiff "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent").

However, we are also aware of the harsh consequences to plaintiff were we to dismiss its case based on pleading deficiencies.   We believe such an outcome means focusing too much on the quality of plaintiff's counsel and not enough on the quality of plaintiff's claims.[7]   We therefore will grant Xethanol's motion to dismiss, but we also will afford plaintiff one final opportunity to amend its complaint, as permitted under Rule 15(a).   Plaintiff should make certain that its next complaint alleges, with specificity, which statements by

---

[7] We pause here to note, merely in the interest of completeness, that a class action was brought in this Court on behalf of investors against Xethanol, along with individual defendants D'Arnaud-Taylor, Langberg and Bellone, alleging federal securities fraud claims -- namely that the defendants knowingly made false statements about Xethanol's financial health and "the development of ethanol technology." In re Xethanol Corp. Sec. Litig., No. 06 Civ. 10234 (HB), 2007 WL 2572088, at *3 (S.D.N.Y. Sept. 7, 2007).  In that case, Judge Baer denied defendants' motion to dismiss, id. at *4, and ultimately approved a $2.8 million cash settlement on October 6, 2008 (see, e.g., Declaration of Mediator Hon. Nicholas H. Politan at ¶ 8, Docket #88, In re Xethanol Corp. Sec. Litig., 06 Civ. 10234 (HB)).

defendants it claims are false, and in what way each of those statements is false.    Plaintiff's next complaint also should state, as precisely as possible, when and where the allegedly fraudulent statements were made, and identify the individuals who made those statements.

Nevertheless, while we believe it is appropriate to grant plaintiff leave to amend its complaint one final time, we also want to mitigate the additional expenses that Xethanol has incurred that are attributable to plaintiff's counsel's failure to plead his client's case properly in one of his first four attempts.    Therefore, we condition our grant of leave to amend on plaintiff's counsel paying Xethanol $5,000 in attorney's fees.[8]

Finally, we deny Xethanol's motion for Rule 11 sanctions against Global Energy and its counsel.    Although we agree that the complaint is legally insufficient as currently pleaded, we do not believe plaintiff's allegations are entirely without

---

[8] In deciding whether it should exercise its discretion to grant leave to amend a complaint, a court should take into account any prejudice that the opposing party will suffer as a result of the amendment, see Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971), and may subject leave to amend to reasonable conditions. See, e.g., Hayden v. Feldman, 159 F.R.D. 452, 454-55 (S.D.N.Y. 1995) (conditioning leave to amend on payment of attorney's fees); Polycast Tech. Corp. v. Uniroyal, Inc., 728 F. Supp. 926, 939 (S.D.N.Y. 1989) (conditioning leave to amend on payment of fees for the preparation of a previously filed responsive pleading rendered moot by the amendment).

evidentiary support[9] or frivolous to such an extent that Rule 11 sanctions are appropriate.[10]

## CONCLUSION

For the reasons stated above, Xethanol's motion to dismiss is granted, and its motion for Rule 11 sanctions is denied. Plaintiff is granted leave to amend its complaint to address the pleading deficiencies discussed above, so long as plaintiff's counsel agrees to pay Xethanol $5,000 to offset Xethanol's attorney's fees already incurred in this case.    Plaintiff is directed to notify the Court within one week if it intends to

---

[9] Xethanol's principal argument in support of its contention that the complaint lacks evidentiary support and thus Rule 11 sanctions are appropriate is that plaintiff never made the alleged $250,000 investment in NewEnglandXethanol.   (Memorandum of Law in Support of Defendant Xethanol Corporation's Motion for Sanctions Against Plaintiff and its Attorney Pursuant to Rule 11 of the Federal Rules of Civil Procedure at 12.)   With its opposition brief, plaintiff submitted a bank statement from a Global Energy account indicating that $250,000 was withdrawn on June 27, 2006, and a second statement indicating that $250,000 was deposited in a NewEnglandXethanol account on June 27, 2006.   (August 2008 Declaration of Lee Tyrol Ex. B.) Xethanol then argued in its reply that "[t]here is no evidence of any kind as to what happened to the $250,000 next, whether it was actually invested in NewEngland Xethanol and, critically, whether Global lost a single penny of that $250,000."   (Reply Memorandum of Law in Further Support of the Motion of Defendant Xethanol Corporation for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure at 3.)   We find Xethanol's argument on this point unpersuasive.   Plaintiff's documents are more than sufficient evidentiary support for its allegations at this early stage of the case.

[10] The parties' briefs also exposed a possible dispute regarding the type of relief, if any, to which plaintiff may ultimately be entitled.   After Xethanol argued that plaintiff could not recover lost profits or consequential damages, as it purported to seek in the complaint (Mem. at 13), plaintiff clarified that it is "not seeking consequential damages[, but] only the direct damage of the $250,000" (Opp. at 11).

11

file a Fourth Amended Complaint.   That complaint will be due within 20 days of this Memorandum and Order.

As to the remaining individual defendants, plaintiff states that it has not yet served any of them with the Third Amended Complaint, apparently because it does not have their addresses. (Opp. at 6 n.2.)   If plaintiff elects to file a Fourth Amended Complaint, Xethanol's counsel is directed to respond to plaintiff's interrogatories seeking the addresses of the remaining individual defendants within one week of that filing, assuming that plaintiff's counsel concludes that service upon Xethanol headquarters would be insufficient for the individual defendants, and assuming that Xethanol's counsel will not accept service on their behalf.

**IT IS SO ORDERED.**

Dated:      New York, New York
            February 23, 2009

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

12

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Counsel for Plaintiff**

Robert A. Vort, Esq.
2 University Place
Hackensack, NJ 07601

**Counsel for Defendant Xethanol Corp.**

Anthony Paduano, Esq.
Katherine B. Harrison, Esq.
Kathryn L. Bedke, Esq.
Paduano & Weintraub, LLP
1251 Avenue of the Americas, Ninth Floor
New York, NY 10020